### UNITED STATES *v.* LABETTE COUNTY.

*(Circuit Court, D. Kansas.          , 1881.)*

1. MANDAMUS—PUBLIC OFFICER.

The only office of the writ of *mandamus*, when addressed to a public officer, is to compel him to exercise such functions as the law confers upon him, and such part of the mandate of the writ as enjoins the performance of duties he has, under the law, no power to perform, is void.

2. SAME—BOARD OF COUNTY COMMISSIONERS—LEVY AND COLLECTION OF TAXES TO SATISFY JUDGMENT.

The laws of Kansas, relative to the collection of taxes, require— (1) That the taxes shall be levied by the board of county commissioners; (2) that the tax roll shall be prepared by the county clerk; (3) that the taxes shall be collected and paid over by the treasurer. A writ of *mandamus* having issued commanding the board of county commissioners " to levy and collect a sufficient tax" to pay a judgment against the county, and " to cause the said moneys to be paid over to" X., the board levied the tax, but it was not collected and paid over. *Held:*

(1) That section 6, c. 107, Laws of Kansas of 1876, did not empower the board to collect the taxes therein referred to, except through the usual agency of the officials of the county, as other taxes were collected.

(2) That the members of the board were not punishable for contempt for failing to obey a writ commanding the performance of duties which by law devolved on the county clerk and treasurer.

(3) That the county clerk and treasurer were not punishable for contempt for failing to obey a writ which was not addressed to or

served upon them, and which does not name them, or command them in terms to do anything.

(4) That the court might issue an order compelling the board to institute proceedings in *mandamus* to compel the county clerk and treasurer to go on and collect and pay over the taxes, or to show cause why the board had not done so.

The relator is plaintiff in a judgment recovered in this court in June, 1877, against Oswego Township, in the county of Labette, Kansas, for $9,221.34. By a peremptory writ of *mandamus*, issued August 2, 1878, the respondents, the Board of County Commissioners of Labette County, were commanded to "levy and collect a sufficient tax upon all the taxable property in Oswego township, in the county of Labette and state of Kansas, to pay the above-mentioned judgment, interest, and costs," and "to cause the said moneys to be paid over to the said Clarence F. Moulton upon the said judgment." The return to this writ showed that the respondents had levied a tax sufficient to pay off the relator's judgment, but did not show that the same had been collected or paid over. Thereupon, on motion of relator, a rule was issued requiring the respondents to show cause why they should not be committed for contempt in not obeying the writ. In answer to this rule the respondents say:

"That, as commanded by the peremptory writ of *mandamus* allowed herein, they levied, as provided by law, the tax therein directed to be levied, as will fully appear by their return to such writ heretofore filed herein and made part hereof, and by a stipulation signed and entered into by the parties hereto and made part hereof. They further say that they did not collect and pay over to the relator herein the taxes so levied, because they have no power, process, or authority by which they can collect or control the disposition of the taxes collected, except so much as may be collected for county purposes; that under the statutes of Kansas it becomes the duty of the county clerk to make out the tax rolls each year, and to enter thereon in proper form the several tax charges against each tract of land or item of personal property in the county; and it becomes the duty of the county treasurer to collect these taxes, and to disburse them as provided by law, and in the discharge of these duties those officers are supreme,—answerable, however, upon their official bonds for any shortcomings or derelictions in the discharge of these powers; and your respondents say they are not in the law, and should not in fact be, held responsible for the conduct of other county officials; that in good faith they did everything that under the law they could do, as commanded by

the said writ of *mandamus*, and hence pray that they may be discharged with their costs."

To this return the relator demurs upon the ground that the same is not sufficient in law, and does not show any fact or legal reason why the respondents should not be adjudged in contempt.

*Brown & Campbell*, for relator.

*B. W. Perkins*, for respondents.

McCRARY, C. J.   1. Assuming that the return is true in fact, does it excuse the board of county commissioners from the performance of so much of the command of the writ as ordered them to collect and pay over, as well as to levy, the taxes to pay relator's judgment?   The excuse offered is, in brief, that although commanded to levy, collect, and pay over, the respondents are powerless to do more than levy, since the law devolves the duty of collecting and paying over upon another officer of the county, the treasurer, who can only act upon tax rolls to be prepared by the county clerk. The office, and the only office, of the writ of *mandamus*, when addressed to a public officer, is to compel him to exercise such functions as the law confers upon him.   When the law enjoins upon such an officer the performance of a specific act or duty, obedience to the law may, in the absence of other adequate remedy, be enforced by this writ.   But the writ neithers creates nor confers power upon the officer to whom it is directed.   It can do no more than to command the exercise of powers already existing.   High on Extraordinary Remedies, § 32; *Johnson* v. *Lucas*, 11 Humph. 306; *Houston Tap. etc., R. Co.* v. *Randolph*, 24 Tex. 317; *Williams* v. *Smith*, 6 Cal. 91; *People* v. *Forquer*, Breese, 68; *United States* v. *County of Clark*, 95 U. S. 769.

These principles are established, not only by the cases here cited, but also by many others.   Indeed, they are among the elementary and fundamental principles of the law of *mandamus*.   Applying them to this case, we are brought inevitably to the conclusion that so much of the mandate of the writ as commanded the respondents to perform duties which they had, under the law, no power to perform, was void.   It was

not competent for the court to devolve upon the respondents any official duty whatever; it was only competent to bring into action—to compel the exercise of powers and duties conferred upon the respondents by law. It is said that this rule will operate oppressively upon the relator by requiring him to institute a separate proceeding in *mandamus* against each of the officers of the county charged with the performance of any duty in connection with levying, collecting, and paying over the taxes necessary for the satisfaction of his judgment. The court cannot presume that the officers of a county, sworn to perform these official duties, will so conduct themselves as to make this necessary, especially in view of the fact that the only possible result of such action would be to accumulate costs, to be paid in the end by their constituents. If, however, the apprehensions of counsel for relator in this regard should all be realized, it would still be our duty to declare and enforce the law as it is, regardless of consequences. The courts do not make the law, and they cannot change it to suit the convenience of litigants. The remedy by *mandamus* is appropriate and adequate. It may be repeated as often as the occasion requires; and, although the debtor corporation or its officers may delay the enforcement and final collection of a judgment by refusing to act, except under compulsion, the court rendering the judgment is clothed with ample power to enforce it. If the respondents, or the other county officials, so act as to make it necessary to multiply writs and add costs to the already heavy burdens of the debtor corporation, I see no way in which this court can prevent it. In the case of *Rees* v. *City of Watertown*, 19 Wall. 107, the supreme court of the United States was asked to sanction a departure from the usual course of proceedings in cases of this character, upon the ground that the municipality had disregarded the mandate of a *mandamus, alias mandamus,* and *pluries mandamus,* commanding it to levy a tax to pay the relator's judgment, and the officers, to avoid obedience, had resigned their offices, so that there seemed to be better prospect of enforcing the judgment by the ordinary means. Nevertheless the court said:

"The remedy is, in law and in theory, adequate and perfect. The difficulty is in its execution only. The want of a remedy, and the inability to obtain the fruits of a remedy, are quite distinct, and yet they are confounded in the present proceeding. * * * * The legal remedy is adequate and complete, and time and the law must perfect its execution."

2. It is suggested, by counsel for the relator, that the board of county commissioners are authorized, by the terms of section 6, c. 107, Laws of Kansas of 1876, to levy and collect the taxes necessary to pay the judgment. That section is as follows:

"Whenever any bonds shall be issued in pursuance of the foregoing provisions, it shall be the duty of the board of county commissioners, or the mayor and counsel of the city, to levy and collect annually, in addition to other taxes, a tax on all taxable property in such county, township, or city, sufficient to pay the interest on such bonds as the same shall become due, and to create a sinking fund sufficient to pay said bonds at maturity; and such tax shall be collected as other taxes are collected, and paid out by the treasurer, upon presentation of the coupons or bonds when due at the treasurer's office, or at such place as may be specified in the petition or proposition herein mentioned."

This section prescribes no new mode of collecting and paying over these particular taxes. It must be construed as applying the machinery afforded by pre-existing laws to the collection and disbursement of the taxes provided for in that act. True, it provides in general terms that the board of county commissioners shall "levy and collect" the taxes, but it also, in the same sentence, declares that "such taxes shall be collected as other taxes are collected." This last provision only makes clear what would probably have been the meaning of the section without it, since a general provision directing the board of commissioners to collect a particular tax could hardly be held to go further than to require them to proceed, according to law, to perform that duty through the proper officers and agencies. The section further provides that the tax, when collected, shall be "paid out by the treasurer on presentation of the coupons or bonds when due at the treasurer's office," etc., which clearly shows that the board of county commissioners were not empowered to perform that duty. Inasmuch as this section provides for the collection of the tax "as other taxes are collected," it becomes

necessary to inquire how other taxes are collected under the statutes of Kansas. It is conceded that it is the duty of the county board to make the levy. Who is to collect and pay over? By section 83, *c.* 107, Comp. Laws of Kansas 1879, it is made the duty of the county clerk to prepare annually, immediately after the first Monday in August, a tax roll, which roll he shall, on or before the first day of November, deliver to the county treasurer, charging him "with the amount of the respective taxes assessed on the tax roll." Subsequent provisions of the same chapter provide for the collection of taxes by the treasurer. I have already cited the provision of the statute which makes it the duty of the treasurer to pay over the particular taxes under consideration to the parties entitled thereto. It appears, then, that the statute requires:

(1) That the taxes shall be levied by the board of county commissioners; (2) that the tax roll shall be prepared by the county clerk; (3) that the taxes shall be collected and paid over by the treasurer.

3. It is insisted that the performance of all the foregoing duties by the several officers above named may be commanded by a single writ addressed to the board of county commissioners alone. It is said that, under the law of Kansas, each county is a corporation under the name and style of "The Board of County Commissioners of the County of ————," and that, therefore, a writ addressed to the board is addressed to the corporation, and may command the board, through its several agents, to perform all the duties commanded by the writ. Each organized county within the state of Kansas is a body corporate and politic; and, in all suits by or against a county, the name in which the county shall sue or be sued shall be the "Board of County Commissioners of the County of ————." Chapter 25, Comp. Laws of Kansas, 1879, §§ 1, 5. In *Commissioners* v. *Sellew*, 99 U. S. 624, the supreme court says:

"As the corporation can only act through agents, the courts will operate upon the agents through the corporation. When a copy of the writ, which has been ordered, is served upon the clerk of the board, it will be served on the corporation, and be equivalent to a command that

the persons who may be members of the board shall do what is required. If the members fail to obey, those guilty of disobedience may, if necessary, be punished for contempt. Although the command is in form to the board, it may be enforced against those through whom alone it can be obeyed. * * * * The board is in effect the officer, and the members of the board are but the agents who perform its duties. While the board is proceeded against in its corporate capacity, the individual members are punished in their natural capacities for failure to do what the law requires of them as the representatives of the corporation."

In that case the question was whether the writ was properly addressed to the board in its corporate capacity, and it was held that such was the proper practice; that the writ once served is retained until the thing is done which is commanded, and it "may at all times be enforced through those who are, for the time being, charged with the obligation of acting for the corporation." It is not decided that a *mandamus* addressed to the board may command the performance of duties which the law devolves upon the clerk and the treasurer; no such question was considered. The question in the present case is, can the members of the board of county commissioners be punished for contempt in failing to collect and pay over the tax levied by them to pay relator's judgment? It is insisted that it was the duty of all the officers of the county, including the clerk and treasurer, to take notice of and obey the mandate of the writ addressed to the board. If this were granted, it would not follow that the board should be held in contempt; for, if the writ can be regarded as addressed to and operating upon the clerk and treasurer, then those officers may be in contempt for failing to obey it, while the board, if it has performed its duty fully, may be exonerated. The members of the board cannot be punished for a failure of the clerk and treasurer to discharge their duties. But I should have great difficulty in holding that the clerk and treasurer could be punished for failing to obey a writ not addressed to or served upon them, and which does not name them, or command them in terms to do anything. I am not prepared to say that, in such a case as the present, the writ might not run against the corporation, and be served upon the several officers who have duties to per-

torm, commanding each to perform the duty required of him by law with respect to the levy, collection, and paying over the tax. But that has not been done. The case is one in which, by inadvertence, the command of the writ is too broad; it commands the board to perform the functions which belong to other officials. The remedy is to take a new writ against the clerk and treasurer, commanding them to discharge their duties. Such writs will be freely granted at any time.

4. Counsel for relator have suggested that the board have not done all that was in their power in their endeavor to obey the writ. It is said that they might, after levying the tax, institute proceedings in *mandamus* to compel the other officials of the county to go on and collect and pay over, and that they might sue such officials on their official bonds for damages for their failure to do so. I suppose the board could do either or both of these things; and, if relator insists, an order may issue directing them to institute such proceedings, or to show cause why they have not done so. But I think the counsel will, upon a little reflection, conclude that the relief he would obtain in this way would probably prove to be very inadequate. No other remedy is likely to be found so effectual as that which is afforded by the writ of *mandamus* issued by the court in which the judgment is rendered, and addressed to the official or officials whose duty it is to levy, collect, and pay over the taxes requisite for the satisfaction of the judgment.

The demurrer is overruled.